# ROGER CHAVEZ
**ATTORNEY AT LAW**
THE NATIONAL NEWARK BUILDING
744 BROAD STREET, SUITE 1600
NEWARK, NEW JERSEY 07102

PHONE (973) 735-0530
FAX (973) 735-0531

*VIA ECF FILING*

April 13, 2021

Hon. Vincent F. Papalia, U.S.B.J.
U.S. Bankruptcy Court, District of New Jersey
50 Walnut Street, Courtroom 3B
Newark, NJ 07102

    RE:    <u>In re Evaristo Burdiez</u>, Debtor
              Chapter 13 | Case No. 20-23664/VFP

              Debtor's Surreply to Cecilia Otero's and Weinberg & Cooper, LLC's Opposition to Debtor's Motion to Hold Cecilia Otero and Weinberg & Cooper, LLC in Contempt for Violating the Automatic Stay and for the Imposition of Sanctions for Violating the Automatic Stay

Dear Judge Papalia:

On April 5, 2021, I received and reviewed both Cecilia Otero's and Weinberg & Cooper, LLC's opposition to the above-referenced Debtor's motion ("Sanctions Motion"). Ms. Otero's counsel appears to have copied most of counsel for Weinberg & Cooper, LLC's legal arguments verbatim, which is very perturbing as this raises ethical implications. *See, e.g., In re Mundie*, 453 Fed. Appx. 9 (2nd Cir. 2011)(Disciplinary action in the form of a public reprimand against attorney was warranted for, *inter alia*, plagiarizing from another attorney's brief.). In fact, there is at least one bankruptcy court which has sanctioned a lawyer for plagiarizing from another lawyer's work. *In re Burghoff*, 374 B.R. 681 (Bankr. N.D. Ia. 2007)(Court brought *sua sponte* action to sanction lawyer who engaged in 'dishonesty, fraud, deceit…' by engaging in plagiarism.). This surreply will address Weinberg & Cooper, LLC's opposition which shall also serve as a response to Ms. Otero's opposition given that her "brief" raised the same identical issues.

Preliminary Statement

After reading the opposition filed to the Sanctions motion, this Court should be outraged that neither Cecilia Otero nor her attorneys, Weinberg & Cooper, LLC, take responsibility for the wrongful eviction that took place on December 17, 2020.  The opposition unapologetically blames everyone from the State court judge to the Bergen County Sheriff's Office and even inculpates me for failing to follow a phantom "standard practice" of noticing creditors of bankruptcy filings.  This Court is too keen to fall for the "blame and deflect" strategy deployed in the opposition brief.  It is uncontroverted that Melissa Cohen, Esq. received notice of the Debtor's bankruptcy when the Bergen County Sheriff's office showed up to the Debtor's home on the morning of December 17, 2020.  *See Cohen Cert.* at ¶ 25.  It is also undisputed that Ms. Cohen did nothing to instruct the Bergen County Sheriffs to desist from proceeding with the eviction.  It is also clear that Ms. Cohen did nothing to ameliorate the Debtor's plight after she was notified of the scheduled December 17, 2020 stay enforcement hearing.  Lastly, it is undeniable that Ms. Cohen, while acting as agent for Ms. Otero, solely placed in motion the events which culminated in the Debtor's illegal ejectment on December 17, 2020.  To suggest that the December 17, 2020 eviction was entirely the machination of a State court judge or the Bergen County Sheriff's office is extremely deceitful and an insult to this Court's discerning observation and intellect.  Given the gravity of the December 17, 2020 stay violation, I invite this Court to render a decision for publication since it can provide ample instruction to overzealous non-bankruptcy attorneys who represent creditors in State court proceedings, particularly in Family matters, and are often dismissive or indifferent to the automatic stay and the powers that Bankruptcy Courts wield.

## The Bankruptcy Court Did Not Decide the Issue of Sanctions and Stay Violations on December 17, 2020

When I filed the motion to enforce the automatic stay on December 17, 2020, my first and only priority was to restore the Debtor and his family back in the property in which he was wrongfully and mercilessly

2

ejected from during a declared State of Emergency snowstorm. On December 17, 2020, my office's entire focus was to restore shelter and secure the well-being of the Debtor and his family, which included a minor child and two elderly in-laws—all who were rendered homeless for the first time in their lives. Finding out who was the culprit for the injustice the Debtor and his family suffered was only an after-thought. Therefore, the issue of who violated the automatic stay or whether sanctions should be assessed was not presented before the Court on December 17, 2020. The December 17, 2020 hearing took place less than 24 hours after the Debtor filed his bankruptcy petition. Both Ms. Otero and Weinberg & Cooper, LLC heavily rely on the transcript of the December 17, 2020 hearing in which the Court clearly stated that it was not making any determination regarding who violated the automatic stay. By stating that neither Ms. Otero nor Weinberg & Cooper, LLC violated the automatic stay, the Court was merely stating that it was not addressing said issue at that time as it was not presented before the Court for adjudication. Since the Court could not have made a concrete determination of liability for stay violations or sanctions on December 17, 2020, there was no decision made on the facts and merits. The doctrine of *res judicata* is inapplicable here as the issues of whether the stay was violated on December 17, 2020 or whether sanctions should be assessed against Ms. Otero and Weinberg & Cooper, LLC were never previously litigated before this Court.

### Melissa Cohen had Notice of the Debtor's Bankruptcy Filing Prior to the Bergen County Sheriff's Forced Eviction of the Debtor and his Family from their Residential Property

Both Ms. Otero and Weinberg & Cooper, LLC allege that I have overblown their misconduct by filing the Sanctions motion. They further argue their clients' stay violation was somehow absolved in that I failed to notify Ms. Cohen of the Debtor's bankruptcy immediately after it was filed at 5:38PM on December 16, 2020 (i.e., after close of business and during an ongoing snowstorm). This argument is a red herring as Ms. Cohen has already admitted she was notified of the Debtor's bankruptcy filing by the Bergen County Sheriff's detail when they arrived at the Debtor's home at 11:00AM on December 17, 2020. *Cohen Cert.* at ¶ 22.

3

Essentially, Ms. Cohen was on notice of the Debtor's bankruptcy filing prior to the Bergen County Sheriff's office ejectment of the Debtor and his family from the property. Ms. Cohen also admitted that she was unsure of the bankruptcy document and what duty she was under at that juncture. *Id.* at ¶¶ 22-23. As this Court pointed out at the December 17, 2020 hearing, "…you don't have to be a bankruptcy lawyer to know [what] the automatic stay [is]…. *See December 17, 2020 Stay Enforcement Hearing Transcript* ("Trans.") at 7:8-9.

Assuming, *arguendo*, that Ms. Cohen was completely ignorant of what the automatic stay meant and what her duty was with relation to the Debtor's bankruptcy, at a minimum, she should have exercised any one of the following options as a precaution: a) reschedule the eviction and instruct the Bergen County Sheriff's officers to leave the Debtor's property; b) request an expedited hearing either before the Bankruptcy Court or State Court to determine how to proceed; c) call Debtor's bankruptcy counsel; or d) consult with a trusted source who is versed in bankruptcy law. *See In re Valentine*, 611 B.R. 622, 649 (Bankr. E.D. Mo. 2020)("If the Defendants were unsure if the automatic stay applied to their situation, they had options. On the bankruptcy front, the Defendants could have requested an expedited hearing with the Court for clarification on the automatic stay or moved for relief from the stay. With the State Court, the Defendants could have asked for continuances, dismissals, or orders held in abeyance. The Attorney could have asked to make a more substantial record if the Attorney genuinely believed he had no control over the proceedings. The Attorney could have refused to draft the Order & Confinement. The Attorney could have at least requested time to phone a friend who might have known more about bankruptcy. However, the Defendants instead chose to allow an injustice to take place."). In the instant case, Ms. Cohen either instructed the Bergen County Sheriff's officers to proceed with the wrongful eviction or she turned a blind eye to the notice of the Debtor's bankruptcy filing and chose to do nothing. Either way, Ms. Cohen violated the automatic stay in that she had notice of the Debtor's bankruptcy filing and allowed via, action or inaction, the Debtor, and his family to be ejected from the property on December 17, 2020. Ms. Cohen's misconduct is made more egregious by the fact that she could have exercised a multitude of options to preserve Ms. Otero's rights while respecting

the automatic stay; however, she either aggressively or passive-aggressively allowed the eviction to take place. Contrary to Ms. Otero's and Weinberg & Cooper, LLC's opposition, Ms. Cohen, not the Debtor or I, was in control of the events that unfolded on December 17, 2020 and had she exercised common sense caution instead of overzealous advocacy, the factual basis of this entire motion would have never materialized.

Both Ms. Otero and Weinberg & Cooper, LLC appear to blame me for not acting swift enough in notifying Ms. Cohen of the Debtor's bankruptcy filing. In fact, they shockingly imply I allowed the eviction to take place by not filing a suggestion of bankruptcy with the Family Court through e-filing. The problem with this argument is that an attorney cannot electronically access or file documents in a Family Part matter unless that attorney is of record. I am not now or ever was the Debtor's counsel of record in the State court matrimonial matter; thus, it was impossible for me to file a suggestion of bankruptcy with the family court between 5:38PM on December 16, 2020 and 11:00AM on December 17, 2020.

As has been noted, my office faxed a notice of the Debtor's bankruptcy filing to Weinberg & Cooper, LLC's main fax line and called Ms. Cohen's office prior to the scheduled 11:00AM eviction on December 17, 2020. My paralegal specifically left a voicemail message on Ms. Cohen's line, before the Bergen County Sheriff officers appeared at the Debtor's home, advising Ms. Cohen of the automatic stay and to not proceed with the scheduled eviction. Despite that there was a snowstorm on that day and that everyone, including yours truly, was working remotely away from our usual offices, we all had access to our voicemails and e-faxes. If I am at fault for not acting diligently enough, then Ms. Cohen was in dereliction of her professional duty to check her voicemail or e-faxes, especially since she knew a drastic action involving potential legal consequences was about to take place. Regardless of whether Ms. Cohen received notice of the Debtor's bankruptcy directly from me, she has already acknowledged receiving notice of the Debtor's bankruptcy filing from another source before the eviction took place, namely from a Bergen County Sheriff's officer via a text message. *See Cohen Cert.* at ¶ 22.

5

Ms. Otero's counsel appears myopically obsessed about the fact that Ms. Cohen received notice of the bankruptcy filing from a Bergen County Sheriff officer and not directly from me. I will not entertain this peculiar argument since 11 U.S.C. § 362(k)(1) and decisional case law clearly requires that the creditor knew or was aware of the bankruptcy filing, irrespective of how or who imparted that knowledge to the creditor and/or his/her attorneys. *See, e.g. In re Scroggin*, 364 B.R. 772, 789-91 (10th Cir. BAP (Kan.) 2007)(holding that "willful" or intentional conduct to violate the stay may be established by simply showing that creditor was aware of the bankruptcy filing and chose not to take affirmative steps to get the garnishment stopped.).

### Melissa Cohen Continued to Violate the Automatic Stay After the Wrongful Eviction and Failed to Exercise Good Faith by Refusing to Restore Debtor back into the Property upon Learning of the Stay Enforcement Hearing

Shortly after Ms. Cohen was notified that the U.S. Bankruptcy Court had scheduled a hearing on the stay enforcement motion on the afternoon of December 17, 2020, she finally contacted me via telephone. During our telephone conversation, Ms. Cohen stated that the Debtor was "an evil human being" and that she intended on telling the Bankruptcy Judge all the bad things he did and all orders he violated during the Family court proceedings. Not once did Ms. Cohen apologize or express remorse for the stay violation. Ms. Cohen did not even inquire about the well-being of the Debtor and his family. In fact, her verbal demeanor expressed utter contempt for the Debtor. Moreover, Ms. Cohen tried to disingenuously or ignorantly argue with me that the bankruptcy stay had no application because the Superior Court of New Jersey, Appellate Division, had previously denied the Debtor's request for an emergency stay of the eviction. At no time did Ms. Cohen attempt to diffuse the stay violation by offering to enter a consent order restoring the Debtor and his family back in the property. Instead, Ms. Cohen belabored over how many years it had taken to remove the Debtor from the property so that Ms. Otero could sell it.

6

Ms. Cohen's conduct immediately after the Debtor's eviction is disturbing as it is devoid of any good faith effort to resolve or reverse the stay violation. *See, e.g., In re LeGrand*, 623 B.R. 604, 614-15 (Bankr. E.D.CA 2020)(sanctioning creditor attorney's passive-aggressive violation of the automatic stay and for failing to exercise good faith in redressing the violation.). Not once did Ms. Cohen offer to undo the harm caused by her stay violation. *See also In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003)(holding that when a creditor has knowledge of a violation of the automatic stay, that creditor has an affirmative duty to undo the violation). Even during her opening dialogue with the Bankruptcy Court on December 17, 2020, it is evident that Ms. Cohen was more concerned about telling the judge how the Debtor violated multiple orders at the State court level instead of undoing the harm done to the Debtor and his family because of the wrongful eviction. *Trans.* at 3:25-4:17. Simply put, Ms. Cohen continued to defy the automatic stay until the Bankruptcy Court made a ruling to enforce the automatic stay and restore the Debtor and his family back in the property. *See, e.g., Copeland v. Kandi (In re Copeland)*, 441 B.R. 352, 360 (Bankr. W.D. Wash. 2010)(failing to take reasonable steps to remedy an action that violates the stay is a continuing stay violation).

### Duty to Halt Post-Petition Actions Against Debtor, including February 5, 2021 State court hearing, was on Melissa Cohen

The opposition brief to Debtor's Sanctions motion states that I was under a duty to notify all parties of the bankruptcy filing, including the Family Court, particularly in its handling of a motion which was filed pre-petition by Ms. Cohen but made returnable post-petition on February 5, 2021. On December 17, 2020, this Court entered an Order enforcing the Automatic Stay and directed me to serve the order on anyone involved in this matter. As I was not representing the Debtor in the State court matters, I was not aware of Ms. Cohen's pre-petition motion in the Family court matter. Nevertheless, Ms. Cohen was aware of the bankruptcy and notwithstanding the Court's December 17, 2020 directive to me, both she and Ms. Otero had an ongoing affirmative duty to notify relevant third parties of the Debtor's bankruptcy and ensure that the automatic stay

7

would not be violated. *See, e.g., In re Brown*, 2012 WL 3908029, at *5 (Bankr. E.D. Pa. 2012)("Courts have placed upon the creditor, rather than the debtor, the duty to take affirmative action to prevent postpetition collection efforts by notifying relevant third parties that the bankruptcy stay is in place **AND** that the prepetition *status quo* must remain."). *See also In re Taylor*, 430 B.R. 30, 311 (Bankr. N.D. Ga. 2010)("A creditor with notice of the bankruptcy has an affirmative duty to ensure that the automatic stay is not violated."). Ms. Cohen's and Ms. Otero's failure to abide by this affirmative duty can be construed as a stay violation and subject them to the imposition of damages. *See, e.g., In re Brown*, 2012 WL 3908029, at *5 (Bankr. E.D. Pa. 2012).

Ms. Cohen prosecuted a motion before the Family court, which was returnable post-petition on February 5, 2021, which sought, *inter alia*, monetary sanctions against the Debtor—a clear stay violation. Ms. Cohen attempts to obviate her duty to stop all court proceedings by stating that she merely informed the Family Court of the Debtor's bankruptcy. Ms. Cohen's obligation was not only to inform the Family court of the Debtor's bankruptcy but to also request that the pending motion be placed on the inactive calendar—something she failed to do. *See, e.g., In re Herron*, 2012 WL 94559 (Bankr. S.D. Cal. 2012)(upon notice of the debtor's bankruptcy filing, creditor had an affirmative duty to **stop** all legal proceedings against Debtor, including garnishments and executions which commenced pre-petition); *In re Jaecksch*, 2007 WL 7141220, at *1 (Bankr. N.D. Ga. 2007)(Defendant's affirmative duty to observe the automatic stay included notifying state court of Debtor's bankruptcy filing **AND** withdrawing the request for a writ of execution.).

Both counsel for Ms. Cohen and Ms. Otero attempt to blame the State court judge who was exercising "judicial discretion" to continue with the February 5, 2021 hearing. This scenario is analogous to the facts of *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010). In *Sternberg v. Johnston*, Debtor's ex-wife and her family law attorney prosecuted a contempt hearing against the Debtor post-petition for failure to pay spousal support. *Sternberg v. Johnston,* at 940-41. During the contempt hearing, the Debtor advised the Family court that he was in bankruptcy. *Id.* Rather than stop the contempt proceedings, the Family court

8

judge proceeded with the contempt hearing and later held the Debtor in contempt and granted a judgment for $87,525.00 in favor of the ex-wife. *Id.* at 941. In finding that the ex-wife's family law attorney violated the automatic stay, the 9th Circuit Court of Appeals found that 11 U.S.C. § 362(a)(1) unambiguously places an "affirmative duty" on the creditor's lawyer to discontinue the action once it gained knowledge of the bankruptcy. *Id.* at 944. In the instant case, Ms. Cohen failed to discontinue the February 5, 2021 hearing—a feat she could have easily accomplished by placing her motion on the inactive calendar. As it turned out, through my efforts and with the assistance of Chief Judge Michael Kaplan and Bergen County Assignment Judge Bonnie Mizdol, we were able to avoid another terrible injustice against the Debtor.

### Cecilia Otero and Weinberg & Cooper, LLC are solely Liable for the Stay Violations Perpetrated against the Debtor

Ms. Otero's counsel incoherently attempts to argue that the State court judge and Bergen County Sheriff's office violated the automatic stay through their own independent actions and that Ms. Otero and Ms. Cohen are completely blameless. This is a rather disingenuous argument since neither the State court judge, nor the Bergen County Sheriff's office prosecuted the Family court matter against the Debtor which led to the entry of the writ of possession and eviction order. It is also doubtful that the State court judge acted solely in concert with the Bergen County Sheriff office to evict the Debtor on December 17, 2020. On a day when the Bergen County Sheriff's office and State courts were closed, somehow, it was Ms. Otero, through Ms. Cohen, who managed to successfully coordinate the eviction of the Debtor.

Bankruptcy courts have realized that when it comes to stay violations, State actors such as judges or sheriffs are acting at the request of the creditor and his/her attorneys. *See, e.g., Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215-16 (9th Cir. 2002)(holding both the creditor and its counsel liable for willful violation of the bankruptcy stay in failing to prevent post-bankruptcy collection activity). Many bankruptcy cases hold that it is ultimately the creditor, not the sheriff, who is responsible for stay violations. *See, e.g., In*

9

*re Ingram*, 508 B.R. 98, 103 (Bankr. E.D. WI 2014)(when sheriff is utilized to secure property of Debtor, it is the creditor, not the sheriff who exercises control over property of the estate.). In the instant case, the Bergen County Sheriff's office was dispatched to enforce an eviction order secured by Ms. Cohen on behalf of Ms. Otero. When the Bergen County Sheriff's office ejected the Debtor from the property, Ms. Otero, not the State court judge or the Bergen County Sheriff's office, had temporary control over the Debtor's homestead which is part of the bankruptcy estate. This was clearly evident when a private locksmith changed the locks on the Debtor's property and had the new keys delivered to Ms. Otero shortly after the eviction took place. The courts which have absolved sheriffs and other State actors of apparent stay violations have adopted a "control" over property test to determine who is liable for a stay violation. In this case, since Ms. Otero had sole control of the Debtor's property after he was evicted, she, not the State court judge or Bergen County Sheriff's office is liable for the stay violation. *See, e.g., Westman v. Andersohn (In re Westman)*, 300 B.R. 338, 344-45 (Bankr. D. Minn. 2003)(explaining where sheriff statutorily required to levy and sell property on behalf of judgment creditor, it was the creditor's duty to prevent violations of the § 362 automatic stay); *In re Zajni*, 403 B.R. 891 (Bankr. M.D. Fla. 2008)(concluding judgment creditor, not sheriff, violated stay by not releasing the vehicle); *In re Hernandez*, 468 B.R. 396, 405 (Bankr. S.D.Cal. 2012)("Upon receiving notice of the Debtor's September 27, 2011 bankruptcy petition, [the judgment creditor] had an affirmative obligation to cease its collection procedures and notify the Sheriff to return the property.").

Ms. Otero's counsel also suggests that neither Ms. Otero nor Ms. Cohen violated the automatic stay but rather it was Judge Mitchell Steinhardt who violated the automatic stay because he issued the eviction order and possibly enforced it. This is perhaps one of the most insipid arguments made in these proceedings. Seasoned bankruptcy practitioners know bankruptcy court judges can void judicial actions which violate the automatic stay by declaring them void *ab initio*. *See, e.g., United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006); *Jordahl v. Dyal (In re Jordahl)*, 555 B.R. 861, 867 (Bankr. S.D. Ga. 2016)(finding that state court's post-petition contempt for failing to pay child support were void as violations of the automatic stay.);

10

*Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273, 283–84 (Bankr. D.S.C. 2009) (holding a judgment obtained in violation of the automatic stay is void *ab initio* and without legal effect). However, creditors remain liable for stay violations even when it appears, they are complicit with a judge in violating the automatic stay. *In re Goodson*, 2018 WL 722461, at *10 (Bankr. N.D. Ala. 2018)(holding creditor, not judge, liable for violating the automatic stay for proceeding with contempt proceedings which resulted in the incarceration of the Debtor despite that judge wrongfully placed Debtor in custody.); *see also Davis v. Blair (In re Davis)*, C/A No. 17-06271-JW, Adv. Pro. No. 18-80038-JW (Bankr. D.S.C. Oct. 3, 2018) (holding that an arrest warrant was void and holding a further hearing to determine if non-debtor spouse who pursued contempt proceedings that resulted in the arrest warrant was liable for damages under § 362(k)).

Both Ms. Otero and her attorneys, Weinberg & Cooper, LLC are jointly and severally liable for the stay violations in the Sanctions motion. *See In re Theokary*, 444 B.R. 306, 323-24 (Bankr. E.D. Pa. 2011)(when counsel is acting within the scope of its authority, agency law permits both counsel and the creditor/client to be liable for counsel's actions to the extent that the bankruptcy stay is willfully violated). While Ms. Otero may argue she never received notice of the Debtor's bankruptcy prior to the December 17, 2020 eviction, she is liable for the stay violation because: a) her direct agent, Melissa Cohen, knew about the filing; and, b) said knowledge is imputed to Ms. Otero as Ms. Cohen acted as her agent. *See, e.g., In re Heghmann*, 316 B.R. 395, 406 (1st Cir. BAP 2004)("a good faith reliance on the advice of counsel is not a defense to a debtor's claim for actual damages " for violation of the bankruptcy stay); *In re Valentine*, 611 B.R. 622, 650 (Bankr. E.D. Mo. 2020)(Debtor's ex-wife cannot escape liability for seeking to collect a pre-petition debt after bankruptcy case is filed as she is not above the law and she cannot escape liability for actual damages that arose from her attorney's legal advice and collection efforts on her behalf.). Likewise, Weinberg & Cooper, LLC cannot escape liability for the offensive conduct it engaged in on behalf of their client. *See, e.g., Id.* (Attorney was an agent of the collection effort and equally culpable for the violation.);

11

*see also In re Banderas*, 236 B.R. 841, 845-46 (Bankr. M.D. Fla. 1999)(creditor/client held liable for stay violation caused by counsel).

### Actual, Compensatory, and Punitive Damages were the Proximate Cause of Cecilia Otero's and Weinberg & Cooper, LLC's Stay Violations

1. Actual Damages

    i.  COVID-19 Diagnosis

In his moving papers, Debtor provided redacted COVID-19 results for three family members. The results were redacted to comply with the privacy rights of third parties, including the identity of a minor child. Although the test results were yielded more than 14 days after the December 17, 2020 eviction, Debtor's non-filing spouse certified that her elderly parents and minor son developed COVID-19 symptoms shortly after the eviction. Debtor's non-filing spouse also certified that the only time her family was exposed to anyone outside the home was with the Bergen County Sheriff officers on December 17, 2020. Ms. Otero and Ms. Cohen could have subpoenaed the names of the Bergen County Sheriff officers who were deputized to carry out the December 17, 2020 eviction and inquired about their COVID-19 status but failed to do so. This Court may also recall that Ms. Otero recklessly exposed the Debtor and his entire household to COVID-19 by hiring a realtor who tested positive for COVID-19 and withheld her diagnosis from the public. Had Ms. Otero and Ms. Cohen complied with the automatic stay, the Debtor's property would not have been contaminated with multiple stranger's nasal or oratory pathogens, including from the aforementioned realtor who was also deputized by Ms. Otero to be present at the eviction!

Had Ms. Cohen instructed the Bergen County Sheriffs officers to turn back and desist from performing the eviction, the Debtor and his household would not have been placed in harm's way during a global pandemic. Unfortunately, Ms. Cohen's zero-sum approach to the Debtor's eviction ignored the foreseeability that an eviction could expose the Debtor and his family to COVID-19.

ii. <u>Water Pipe Damage</u>

If Ms. Otero or Ms. Cohen wish, the Debtor can request an estimate to repair the water pipe that was ruptured on December 17, 2020 when someone from the Bergen County Sheriff's office, or the realtor, or the locksmith, shut off the heat from the home during a freezing day which saw a historic snowstorm. Contrary to counsel for Ms. Otero's assertions, the Debtor cannot file an insurance claim for the water pipe damage as lead pipe damage is excluded from insurance coverage. Ms. Otero has failed to offer any remuneration to address the repair of this pipe despite that she is a co-owner of the property and the damage likely resulted from her stay violation.

iii. <u>Emotional Distress</u>

Debtor's non-filing spouse and 10-year-old stepson started seeing a psychologist over a month ago to treat their post-traumatic stress disorder which stemmed from having been forcibly removed from their home on December 17, 2020. Although the binding Third Circuit case of *In re Lansaw*, 853 F.3d 657, 669 (3rd Cir. 2017) no longer requires corroborating medical evidence to prove emotional damages, the Debtor is open to this Court scheduling an evidentiary hearing regarding proof of emotional damages. However, given the particularly egregious violation of the stay which took place on December 17, 2020, this Court can take the non-filing spouse's certification as credible evidence of the emotional damages caused by Ms. Otero and her attorneys' violation of the stay.

iv. <u>Legal Fees</u>

Most of the legal fees I seek to recover against Ms. Otero and Weinberg & Cooper, LLC stem from the events which took place on December 17, 2020, including filing the stay enforcement motion. Counsel for Ms. Otero and Weinberg & Cooper, LLC argue that I engaged in unnecessary litigation by filing the enforcement motion. Could either counsel elucidate how I was going to get the Debtor and his family restored back into the property without seeking intervention from the bankruptcy court? As previously mentioned, neither Ms. Otero nor Ms. Cohen offered to voluntarily restore the Debtor's possession of the property. In

13

fact, Ms. Cohen only complained about the Debtor's conduct during the State court proceedings while addressing the bankruptcy court at the stay enforcement hearing. My actions were exclusively motivated by the Debtor's and his family's safety, not by personal profit. I personally loathe filing motion for sanctions. However, when a nescient litigant refuses to respect the authority of the U.S. Bankruptcy Court and the automatic stay, there is no other recourse but to engage in motion practice. I could have escalated this matter in literally making it a Federal case by filing an adversary complaint against Ms. Otero and her attorneys, but opted the more efficient, inexpensive and allowable route of recovering sanctions via motion practice.

v. <u>Punitive Damages</u>

The purpose of punitive damages is to deter future misconduct. *In re Lansaw*, 853 F.3d at 670 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)). It should be noted that neither Ms. Otero nor Weinberg & Cooper, LLC have admitted fault, shown remorse, or apologized to the Debtor for what they made him and his family endure on December 17, 2020. Given the particularly egregious and vindictive nature of Ms. Otero's misconduct towards the Debtor, punitive damages are warranted. Furthermore, this Court needs to deter future non-bankruptcy attorneys from overlooking the automatic stay and trivializing the Bankruptcy Court's power to sanction entities for violating provisions of the Bankruptcy Code. *See, e.g. Donaldson v. Bernstein*, 104 F.3d 547, 556-57 (3rd Cir. 1997)(decision to award punitive damages and the scope of any such damages are within the discretion of the finder of fact).

## Ms. Otero's Request for Sanctions against Debtor has no Basis in Law or Procedure

Pouring the proverbial salt on a gashing wound, Ms. Otero's counsel recites an incoherent stream of consciousness argument in his opposition by which he requests sanctions against the Debtor. The Court should deny this request as Ms. Otero's counsel failed to follow the "safe harbor" provision contained in Fed.

14

R. Bankr. P. 9011.  Moreover, Ms. Otero's counsel should really familiarize himself with the seminal case in our district on the procedural mechanisms behind Rule 9011 sanctions.  *See In re Jazz Photo Corp.*, 312 B.R. 524 (Bankr. D.N.J. 2004).

### Conclusion

Both Ms. Otero, via agency relationship, and Weinberg & Cooper, LLC, via actual knowledge, were aware of the Debtor's bankruptcy filing prior to the Bergen County Sheriff officers removing the Debtor and his family from the property on December 17, 2020.  Both counsel for Ms. Otero and Weinberg & Cooper, LLC have unavailingly argued that their clients had no intention of violating the automatic stay on December 17, 2020 and afterwards.  Nevertheless, "willfulness" does not require that a creditor intends to violate the automatic stay; rather, it requires that the acts which violate the stay be intentional. *Lansdale Family Restaurants, Inc. v. Weis Food Service*, 977 F.2d 826, 829 (3rd Cir. 1992).  There is no question the December 17, 2020 was an intentional act which yielded a desired result for Ms. Otero and her family law attorneys.  Allowing the December 17, 2020 eviction to take place while on notice of the Debtor's bankruptcy filing triggers Ms. Otero and Weinberg & Cooper, LLC's liability for violating the automatic stay.

> "It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed."

*Lansdale Family Restaurants, Inc. v. Weis Food Service*, 977 F.2d 826, 829 (3rd Cir. 1992)(internal citations and quotation marks omitted).

Debtor reiterates his prayer for relief and respectfully requests that this Court sanction Ms. Otero and Weinberg & Cooper, LLC for violating the automatic stay on multiple occasions and award the requested damages which are appropriate per the quantum of damages criteria established in *In re Lansaw*, 853 F.3d

15

657, 671 (3rd Cir. 2017)(imposing a 4-to-1 ratio between the punitive damages award and the actual damages award).

          Sincerely,

          /s/ Roger Chavez
          Roger Chavez
          Attorney for Debtor, Evaristo Burdiez